IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DAUBERT,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>CITY OF LINSDAY,<br>　　　　　Defendant. | ) 1:10-cv-0016 GSA<br>)<br>) MEMORANDUM AND ORDER RE:<br>) MOTION TO DISMISS<br>) FIRST AMENDED COMPLAINT<br>)<br>) (Document 42)<br>) |

## BACKGROUND

On February 23, 2010, Plaintiff, Timothy Daubert, ("Plaintiff") filed a First Amended Complaint ("FAC") against Defendant, City of Lindsay ("Defendant").[1] The FAC alleges violations of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("the Rehabilitation Act" or "RA") at the McDermont Field House which is a large in-door recreational facility operated by Defendant ("the Field House").

On March 18, 2011, Defendant filed a Motion to Dismiss.[2] (Doc. 42). Plaintiff filed an opposition on April 22, 2011. (Doc. 43). Defendant filed a reply on April 22, 2011. (Doc. 44).

---

[1] Plaintiff initially filed a complaint on January 5, 2010. (Doc. 1). The parties engaged in significant settlement negotiations that resulted in dismissal of some of the causes of action. (Docs. 23, 25, 26). On December 22, 2010, Plaintiff subsequently obtained counsel and leave to amend the complaint was given on February 9, 2011. (Doc. 40).

[2] The parties consented to Magistrate Judge jurisdiction and the case was re-assigned to this Court for all purposes. (Docs. 6, 15, and 16).

On May 25, 2011, the Court took the matter under submission pursuant to Local Rule 230 (g). (Doc. 46).  Upon a review of all of the pleadings, Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), the court accepts the complaint's material allegations of fact as true, and the court construes these facts in the light most favorable to the non-moving party. Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a probability requirement, but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50 (internal cites and quotes omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## SUMMARY OF PLAINTIFF'S COMPLAINT [3]

The FAC alleges the following :

Plaintiff is a resident of the City of Lindsay with physical disabilities.  He is significantly impaired in his ability to walk and uses a wheelchair for mobility.

Defendant is a public entity who owns, operates, and controls the McDermont Field House located in Lindsay, California.

The McDermont Field House is a renovated sports facility that was originally an abandoned orange packinghouse.  It held its grand opening on June 21, 2008.

The entire Field House encompasses approximately 172,000 square feet.  It is a venue

---

[3] The summary is not a full recitation of all facts contained in the FAC but contains only relevant portions of Plaintiff's allegations.

that includes basketball courts, laser tag arenas, arcades, concession stands, restaurants, an indoor FlowRider, an indoor skate park, a 50 foot climbing wall, regulation indoor soccer fields, and a zipline that starts from four stories up. It also includes a dance floor, hosts concerts, bike and car shows, and more.

On or about December 4, 2009, Plaintiff went to the Field House and paid his admission fee so that he could enjoy the programs available within. Unfortunately, he encountered a number of inaccessible and discriminatory conditions.

The path of travel that leads from the accessible parking on the north side of the Field House to the entrance is inaccessible to wheelchair users because the sidewalk is only thirteen inches in width which violates the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") §§ 4.3.2(a) and 4.3.3.

The path of travel from the slot car track to the second floor is discriminatory to wheelchair users. Ambulatory persons simply take the adjacent stairs. The accessible path of travel for wheelchair users is dramatically longer and requires the wheelchair user to go outside on a balcony, exposed to the elements (wind, cold, and rain), before reentering the building. This violates section 4.3.2(a) of the ADAAG that requires that the "accessible route shall, to the maximum extent feasible, coincide with the route for the general public."

The ramp that leads from the arcade area to the gym/rock wall is fifty two feet long with a rise of forty two inches. Pursuant to ADAAG § 4.8, level landings at the bottom and the top of each ramp and ramp run are required. Here, the landing in the middle of the ramp has an incline which is exhausting for Plaintiff.

The soda fountain counter, which is also the sales and service counter in the dining room area, is forty six inches high and inaccessible to wheelchair users. ADAAG § 7.2 requires a portion of the counter to be no higher than thirty six inches above the finished floor.

There are no wheelchair accessible tables in the dining area. The knee clearance at each of the tables was approximately twenty two inches although the access standards provide for an

absolute minimum of twenty seven inches. ADAAG § 4.32.3.

There is no vertical access from the fourth floor to the fifth floor where the zip line is located in violation of ADAAG §§ 4.3.2. and 4.3.8.

Mr. Daubert personally encountered these inaccessible and discriminatory barriers and is now and has been continually deterred from attempting to participate in the events and programs offered at the Field House because of his knowledge that the facility is inaccessible to wheelchair users.

## DISCUSSION

In the Motion to Dismiss, Defendant contends that Plaintiff has violated this Court's order giving Plaintiff leave to amend the complaint. Specifically, Defendant argues that Plaintiff was given explicit instructions that no additional claims shall be added. The FAC alleges six causes of action, however, Defendant argues that Plaintiff has significantly altered two of the existing claims: 1) that the ramp to the gym/rock wall should have level landings, and 2) that the sales and service counter is too high. Defendant argues that Plaintiff also added a new claim, that there is no vertical access between the fourth and fifth floor. Defendant argues these claims should be stricken or dismissed because the claims were added in violation of this Court's order and in violation of Federal Rule of Civil Procedure 15.[4] (Doc. 40). Defendant also requests that two other causes of action be dismissed for failure to state a claim: 1) that the path of travel to the second floor is inaccessible, and 2) that there are no wheelchair tables in the dining area. The Court will address all of these issues below.[5]

### Title II of the ADA and the Rehabilitation Act

Title II of the ADA and § 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the

---

[4] The original complaint only had five remaining causes of action.

[5] Defendant also challenged Plaintiff's standing based on his physical disability but subsequently withdrew this argument in its Reply.

ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Similarly, section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d at 1052.  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act. The Ninth Circuit has therefore observed that "[t]here is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Pierce v. County of Orange, 526 F. 3d 1190, 1216 fn 27 (9th Cir. 2008).  Thus, if the Court determines that the FAC alleges a cause of action under the ADA, the claims under the Rehabilitation Act also survive.

       *A.     New Construction or Alteration*

Under Title II of the ADA, each facility or part of a facility that is built or altered after 1992 must be readily accessible to and useable by persons with disabilities. 28 C.F.R § 35.151 provides the following:

       **New construction and alterations.**
       (a) Design and construction.
       (1) Each facility or part of a facility constructed by, on behalf of, or

6

> for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992 ...
>
> (b) Alterations.
>
> Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992...
>
> (c) Accessibility standards and compliance date.
>
> (1) If physical construction or alterations commence after July 26, 1992, but prior to September 15, 2010, then new construction or alterations subject to this section must comply with either UFAS or the 1991 Standards[6] except that the elevator exemption contained at section 4.1.3(5) and section 4.1.6(1)(k) of the 1991 standards shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.
>
> 28 C.F.R § 35.151.

As a preliminary matter, although Plaintiff did alter two of the claims and added a new claim, the Court will permit these modifications. Defendant correctly points out that these claims are beyond the scope of this Court's order. Moreover, under Rule 15(a), a plaintiff may amend his complaint once "as a matter of course," and without leave of court, before a response has been filed. Fed.R.Civ.P. 15(a)(1); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). However, a party can only amend the pleading with the opposing party's written consent or the court's leave once a responsive pleading has been filed. Fed.R.Civ.P. 15(a)(2). Here, leave to amend was not given by the Court for all of Plaintiff's amendments.

However, Fed. R. Civ. Proc. 15(a) provides that a court "should freely give leave [to amend] when justice so requires." The United States Supreme Court has stated:

> [i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

---

[6] The 1991 standards refer to the ADAAG.

allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."
*Foman v. Davis*, 371 U.S. 178, 182 (1962).

This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th 2003) (citations omitted). The Ninth Circuit has identified four factors to examine when evaluating whether leave to amend a complaint should be given including : (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of amendment. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). However, not all factors merit equal weight. *Eminence Capital, LLC, v. Aspeon*, 316 F. 3d at 1052. It is the consideration of prejudice that carries the greatest weight. Id. Absent prejudice, or a strong showing of the remaining factors, there is a presumption in favor of granting leave to amend. Id.

In this case, Plaintiff has indicated that he will file new claims in separate lawsuits if leave to amend is not permitted. At this juncture, discovery has not yet commenced and it is more judicially efficient for this Court to allow an amendment rather than requiring Plaintiff to file additional actions and relate the cases at a later date. Moreover, the two claims that Defendant alleges Plaintiff altered were very similar to the initial causes of action. Accordingly, Defendant's Motion to Dismiss the following three claims : 1) that the ramp to the gym/rock wall should have level landings; 2) that the sales and service counter is too high; and 3) there is no vertical access for the fourth floor to the fifth floor is DENIED. Plaintiff is permitted to add these claims.

      1.     Travel from the Slot Car Track to the Second Floor

Plaintiffs alleges that the path of travel from the slot car track to the second floor is discriminatory to wheelchair users because wheelchair users must take a longer route than ambulatory individuals. Part of this route entails traveling outside on a balcony that exposes wheelchair patrons to poor weather conditions. Defendant notes the section the ADAAG

Plaintiff relies upon is not accurate. Instead, Defendant argues that the controlling ADAAG section is 4.3.2(2) and 4.3.2(3), and the allegations in Plaintiff's FAC indicate that Defendant is in fact in compliance with those sections because there is one accessible access which is all that is required. Therefore, Plaintiff has failed to state a claim.

In opposition, Plaintiff concedes the ADAAG citation is incorrect for this cause of action. However, he also argues that the ADAAG are only guidelines and the ADA mandates that disabled individuals be mainstreamed into society and be provided with equal experiences and opportunities to the greatest extent possible. Here, Plaintiff alleges he is being discriminated against under Title II of the ADA because he is forced to travel a longer distance and must go outside to get to the same destination as ambulatory individuals. In reply, Defendant argues that the ADAAG was designed to give the public notice of what is required to be in compliance with the ADA. Since Defendant has complied with its obligations, Plaintiff's claim is not cognizable.

The Court agrees with both parties. Although Defendant correctly points out that the ADAAG are more than just guidelines, the regulations requires that "each facility... shall be designed and constructed in such manner that the facility or part of the facility *is readily accessible to and usable by individuals with disabilities*." 28 C.F.R § 35.151(a)(1). At this juncture, the Court does not have enough facts about the conditions in the facility, how far Plaintiff must travel to reach the second floor, as well as how much time Plaintiff must travel outside to get to his destination. These are some of the facts the Court will need to examine to determine whether this facility is accessible and usable for individuals with disabilities and compliant with the ADA. The Court notes however, that Plaintiff's complaint as alleged does not state a cause of action because it relies upon incorrect legal authority. Accordingly, Plaintiff will be given leave to amend this cause of action to remedy this deficiency and more clearly articulate the legal basis for the claim.

///

///

2.     No Wheelchair Accessible Tables in the Dining Area.

Defendant argues Plaintiff's claim that there are no accessible wheelchair tables in the dining area should be dismissed because ADAAG § 4.32.3 only requires a twenty seven inch knee clearance at "fixed" dining room tables. Defendant contends Plaintiff has not alleged that the dining room tables are fixed, but has only alleged that the dining room tables are inaccessible because the knee clearance at each of the tables was approximately twenty two inches and is therefore deficient. In opposition, Plaintiff notes the crux of the allegation is that there are no accessible tables in the dining area for disabled individuals and whether the tables are fixed or not is irrelevant at this stage of the proceedings.

The Court agrees with Plaintiff.. A review of the complaint reveals that Defendant is given enough notice of Plaintiff's claim. The discovery process will reveal the types of tables the dining room contains and whether the configuration of the tables is in compliance with the appropriate statutory and regulatory authority. Accordingly, Defendant's Motion to Dismiss this claim is DENIED.

In addition, as previously noted, there is not a significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act. <u>Pierce v. County of Orange</u>, 526 F. 3d 1190, 1216 at fn 27 (9th Cir. 2008). Since the Court has determined the FAC sufficiently pleads causes of action under the ADA for all but one of the causes of action, it similarly finds that Plaintiff has stated corresponding claims under the Rehabilitation Act. Plaintiff will be given leave to amend the FAC under the same parameters as outlined in the analysis of the ADA claims.

Finally, although the Court has permitted Plaintiff to add additional claims and has been given leave to amend the FAC, Plaintiff 's counsel is advised that he was only permitted to do so because the Court determined that this is a rare circumstance and in the interest of judicial economy. However, counsel is also advised that this Court's orders are directives that must be followed, and are not mere suggestions. Failure to follow this Court's orders in the future will

10

1  result in the imposition of sanctions.  Plaintiff has been given numerous opportunities to amend
2  this complaint and this will be his final opportunity to do so.  If Plaintiff decides to file an
3  amended complaint, he is reminded that an amended complaint supercedes the original
4  complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814
5  F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or
6  superceded pleading." Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in
7  the [FAC] which are not alleged in an second amended complaint are waived." King, 814 F.2d
8  at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord
9  Forsyth, 114 F.3d at 1474.
10  ///
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27
28

# ORDER

Accordingly, based on the above the court ORDERS that :

1. Defendant's Motion to Dismiss is DENIED as to the following causes of action:

    a) the ramp to the gym/rock wall should have level landings;

    b) the sales and service counter is too high; and

    c) there is no vertical access for the fourth floor to the fifth floor;

2. Defendant's Motion to Dismiss is GRANTED with regard to Plaintiff's cause of action related to the accessibility of the second floor from the slot car track. However, Plaintiff will be given leave to amend this claim.  Any second amended complaint must be filed **no later than June 22, 2011**. Failure to file within the allotted time will result in dismissal of this claim;

3. This Court will hold a scheduling conference on **June 27, 2011, at 10:30** in Department 10.  The parties shall submit a joint scheduling conference report no later than June 22, 2011.  Telephonic appearances will be permitted; and

4. The parties are again advised that failure to follow this Court's orders will result in the imposition of sanctions.  Furthermore, the Court is motivated to efficiently resolve this litigation since the case has been pending for a lengthy period and it appears the parties are not able to settle the matter.  In formulating dates, discovery should last no longer than three months.

IT IS SO ORDERED.

**Dated:   June 9, 2011**                            **/s/ Gary S. Austin**
                                                     UNITED STATES MAGISTRATE JUDGE