# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY DAUBERT,** | **1:10-cv-0016 GSA** |
| **Plaintiff,** | **MEMORANDUM AND ORDER RE:** |
| **v.** | **MOTION TO DISMISS** |
| | **FIRST AMENDED COMPLAINT** |
| **CITY OF LINSDAY,** | |
| **Defendant.** | **(Document 53)** |

## BACKGROUND

On June 23, 2011, Plaintiff, Timothy Daubert, ("Plaintiff") filed a Second Amended Complaint ("SAC") against Defendant, City of Lindsay ("Defendant"). The SAC alleges violations of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("the Rehabilitation Act" or "RA") at the McDermont Field House in Lindsay, California, which is a large indoor recreational facility operated by Defendant ("the Field House"). (Doc. 48).

On July 7, 2011, Defendant filed a Motion to Dismiss.[1]  (Doc. 42).  Plaintiff filed an opposition on August 4, 2011. (Doc. 55). Defendant filed a reply on August 11, 2011. (Doc. 56). On August 12, 2011, the Court took the matter under submission pursuant to Local Rule 230(g). (Doc. 57).  Upon a review of all of the pleadings, Defendant's Motion to Dismiss is GRANTED.

---

[1] The parties consented to Magistrate Judge jurisdiction and the case was re-assigned to this Court for all purposes.  (Docs. 6, 15, and 16).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6) a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), the court accepts the complaint's material allegations of fact as true, and the court construes these facts in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual

1   content that allows the court to draw the reasonable inference that the defendant is liable for the

2   misconduct alleged." Iqbal, 129 S.Ct. at 1949.

3       The plausibility standard is not akin to a probability requirement, but it asks more
        than a sheer possibility that a defendant has acted unlawfully.  Where a complaint
4       pleads facts that are merely consistent with a defendant's liability, it stops short of
        the line between possibility and plausibility of entitlement to relief.
5       . . .
        Determining whether a complaint states a plausible claim for relief will . . . be a
6       context specific task that requires the reviewing court to draw on its judicial
        experience and common sense.  But where the well-pleaded facts do not permit
7       the court to infer more than the mere possibility of misconduct, the complaint has
        alleged – but it has not shown – that the pleader is entitled to relief.
8

9   Iqbal, 129 S.Ct. at 1949-50 (internal cites and quotes omitted).  "In sum, for a complaint to

10  survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

11  that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v.

12  United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

13                          **SUMMARY OF PLAINTIFF'S COMPLAINT [2]**

14       The SAC alleges the following :

15       Plaintiff is a resident of the City of Lindsay with physical disabilities.  He is significantly

16  impaired in his ability to walk and he uses a wheelchair for mobility.

17       Defendant is a public entity who owns, operates, and controls the McDermont Field

18  House located in Lindsay, California.

19       The McDermont Field House is a renovated sports facility that was originally an

20  abandoned orange packinghouse.  It held its grand opening on June 21, 2008.

21       The entire Field House encompasses approximately 172,000 square feet.  It is a venue

22  that includes basketball courts, laser tag arenas, arcades, concession stands, restaurants, an indoor

23  FlowRider, an indoor skate park, a 50 foot climbing wall, regulation indoor soccer fields, and a

24  zipline that starts from four stories up.  It also includes a dance floor, hosts concerts, bike and car

25

26      [2] The summary is not a full recitation of all facts contained in the SAC but contains only relevant portions

27  of Plaintiff's allegations.

28                                              3

shows, and more.

On or about December 4, 2009, Plaintiff went to the Field House and paid his admission fee so that he could enjoy the programs available within.  Unfortunately, he encountered a number of inaccessible and discriminatory conditions.

The path of travel that leads from the accessible parking on the north side of the Field House to the entrance is inaccessible to wheelchair users because the sidewalk is only thirteen inches in width which violates the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") §§ 4.3.2(a) and 4.3.3.

The path of travel from the slot car track to the second floor is discriminatory to wheelchair users.  Ambulatory persons simply take the adjacent stairs.  The "accessible" path of travel for wheelchair users is dramatically longer and requires the wheelchair user to go outside on a balcony, exposed to the elements (wind, cold, and rain), before reentering the building.  This violates the anti-discrimination provisions of the ADA and the provision under 28 C.F.R. 35.151(a)(1) that new facilities be designed so that they are readily accessible to and useable by persons with disabilities.

The ramp that leads from the arcade area to the gym/rock wall is fifty two feet long with a rise of forty two inches.  Pursuant to ADAAG § 4.8.4, level landings at the bottom and the top of each ramp and ramp run are required.   Here, the landing in the middle of the ramp has an incline which is exhausting for Plaintiff.

The soda fountain counter, which is also the sales and service counter in the dining room area, is forty six inches high and inaccessible to wheelchair users.  ADAAG § 7.2 requires a portion of the counter to be no higher than thirty six inches above the finished floor.

There are no wheelchair accessible tables in the dining area.  The knee clearance at each of the tables was approximately twenty two inches although the access standards provide for an absolute minimum of twenty seven inches. ADAAG § 4.32.3.

There is no vertical access from the fourth floor to the fifth floor where the zip line is

located in violation of  ADAAG §§ 4.3.2. and 4.3.8.

Mr. Daubert personally encountered these inaccessible and discriminatory barriers and is now and has been continually deterred from attempting to participate in the events and programs offered at the Field House because of his knowledge that the facility is inaccessible to wheelchair users.

## PROCEDURAL HISTORY

Plaintiff initially filed a complaint on January 5, 2010.  (Doc. 1).  The parties engaged in two days of settlement negotiations that resulted in dismissal of some of the causes of action.  (Docs. 23, 25, 26).  On  December 22, 2010, Plaintiff subsequently obtained counsel and leave to amend the complaint was given on February 9, 2011.  (Doc. 40).  Plaintiff filed a First Amended Complaint on February 23, 2010.  (Doc. 41).  Defendant filed a Motion to Dismiss on March 18, 2011 requesting dismissal of several of the claims in the FAC.  (Doc. 42).  On June 9, 2011, the Court denied most of Defendant's requests except for one claim involving the travel path from the slot car track to the second floor.  This claim was dismissed with leave to amend.  (Doc. 47).  Plaintiff filed a SAC on June 23, 2011 amending this claim.  (Doc. 48).  Defendant filed the instant motion on July 7, 2011.

## DISCUSSION

As a preliminary matter, Defendant has requested that Plaintiff's SAC be dismissed because it was filed one day past the deadline.  However, a dismissal sanction for missing a filing deadline by one day is too harsh.  Notwithstanding, Plaintiff's counsel is advised that he is establishing a pattern of ignoring this Court orders including filing additional claims in the FAC when he was explicitly ordered not to do so (Doc. 47 at pg. 10-11), and now filing the SAC late when this Court's previous order was clear that the claim would be dismissed if the pleading was not timely filed.  (Doc. 47 at pg. 11).  Although the Court will not dismiss the claim because it was untimely filed, the claim will be dismissed for other reasons stated below.

As previously noted, the sole issue presented in this motion is whether Plaintiff's claim

5

regarding travel to the slot car track is cognizable.  In particular, Plaintiff alleges that the path of travel from the slot car track to the second floor is discriminatory to wheelchair users because ambulatory persons may take adjacent stairs. Meanwhile, wheelchair users must take a dramatically longer route which goes out onto a balcony exposing the wheelchair user to the elements (wind, cold, and water).  Plaintiff contends that this violates the "anti-discrimination provisions of the ADA" and 28 C.F.R. § 35.151(a)(1) which requires that new facilities be designed so that they are readily accessible.

Defendant argues that Plaintiff's reliance on 28 C.F.R. § 13.151(a)(1) is misplaced because Plaintiff's pleading demonstrates that Defendant's facility is in compliance with the ADAAG.  More specifically, Defendant contends that ADAAG § 4.3.2(2) controls in this circumstance and it only requires that "at least one accessible route shall connect accessible buildings, facilities, elements, and spaces that are on the same site."  "Accessible"  is defined as "a site, building, facility, or portion thereof that complies with [the 1991 Standards].[3] "Accessible route" is defined as a "continuous unobstructed path connecting all accessible elements or a building or facility.  Interior accessible routes may include corridors, floors, ramps, elevators, lifts and clear floor space at fixtures.  Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts."  ADAAG § 3.5.

Defendant argues that the SAC does not allege that the route is in any way "obstructed" and is accessible.  Since the facility is in compliance with the 1991 Standards, Defendant asserts it is also in compliance with 28 C.F.R. § 35.151(a)(1) and Title II of the ADA.  Plaintiff therefore has not stated a cause of action.

In opposition, Plaintiff argues that the SAC conforms to the instructions given in this Court's previous order permitting him leave to amend.  In support of this contention, he cites 28 C.F.R. 35.151(a)(1) as well as the fact that the Court noted it needed more information in order to determine whether the facility was compliant with the ADA. Plaintiff opines there is no

---

[3]  The 1991 Standards refer to the ADAAG.

published decision regarding a scenario where there may be a violation of the ADA despite technical compliance with the ADAAG.  However, Plaintiff's counsel does not cite to any other legal authority in support of his theory of the case.  Notwithstanding, Plaintiff requests that the case be permitted to continue so that the Court can obtain the necessary facts to make a responsible determination.

In reply, Defendant argues that Plaintiff has failed to provide any legal basis supporting his theory of the case.  Moreover, Defendant contends that the guidelines provide notice to the public outlining the requirements under the ADA.  Since Defendant has complied with the ADAAG, principles of due process preclude liability.

Based on the additional briefing provided by the parties regarding this issue, the Court agrees with Defendant.

**Title II of the ADA and the Rehabilitation Act**

Title II of the ADA and § 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Similarly, section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  Lovell v. Chandler, 303 F.3d at 1052.  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is

7

handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act. The Ninth Circuit has therefore observed that "[t]here is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Pierce v. County of Orange, 526 F. 3d 1190, 1216 fn 27 (9th Cir. 2008). Thus, if the Court determines that the cause of action in question states a claim under the ADA, the claim under the Rehabilitation Act also survives.

A.   The ADAAG/The 1991 Standards

Congress directed the Department of Justice ("DOJ") to issue regulations that provide substantive standards applicable to facilities under the ADA. 42 U.S.C. § 12134(b); Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579, 580 (D.C.Cir.1997), cert. denied sub nom. Pollin v. Paralyzed Veterans of Am., 523 U.S. 1003 (1998). DOJ, in turn, adopted as regulations a set of guidelines promulgated by the Architectural and Transportation Barriers Compliance Board ("Access Board"), a body charged with "establish[ing] and maintain[ing] minimum guidelines and requirements for the standards issued pursuant to" the A.D.A. 29 U.S.C. § 792(b)(3)(B). These guidelines, known as the ADAAG are the standards used to interpret the ADA and related regulations.  Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc. 339 F.3d 1126, 1129 (9th Cir. 2003).

B.   New Construction or Alterations

Under Title II of the ADA, each facility or part of a facility that is built or altered after 1992 must be readily accessible to and useable by persons with disabilities. 28 C.F.R § 35.151 provides the following:

> **New construction and alterations.**
>
> (a) Design and construction.
>
> (1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in

8

such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992 ...

(b) Alterations.

Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992...

(c) Accessibility standards and compliance date.

(1) If physical construction or alterations commence after July 26, 1992, but prior to September 15, 2010, then new construction or alterations subject to this section must comply with either UFAS[4] or the 1991 Standards except that the elevator exemption contained at section 4.1.3(5) and section 4.1.6(1)(k) of the 1991 standards shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

(2) If physical constructions or alterations commence on or after September 15, 2010 and before March 15, 2012, then new construction and alterations subject to this section may comply with one of the following " The 2010 Standards, UFAS, or the 1991 Standards ... Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

(3) If physical alternations or alterations commence on or after March 15, 2012, then new construction and alterations subject to this section shall comply with the 2010 Standards.

28 C.F.R § 35.151 (c).

The SAC alleges that the Field House had its grand opening on June 21, 2008, and Plaintiff filed this case on January 5, 2010.  Thus, 28 C.F.R.§ 35.151(c)(1) requires that the Field House *must* comply with either the UFAS or the 1991 Standards. 28 C.F.R.§ 35.151(c)(1).  Here, both parties agree that there has been "technical" compliance with the ADAAG.  (Doc. 55, pgs. 4-5 and Doc. 53 at pg. 7). At issue is whether Plaintiff can state a claim under the ADA despite

---

[4] UFAS refers to the Uniform Federal Accessibility Standards.

this compliance.  In this particular instance, the answer is no.

Defendant correctly notes that the original version of 28 C.F.R. § 35.151(c) published on July 26, 1991 in the Federal Register clearly indicates that compliance with the ADAAG satisfied the requirements of the ADA:

> Design construction, or alteration of facilities in conformance with the Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disability Act Accessibility Guidelines for Buildings and Facilities [citation omitted] ***shall be deemed to comply*** with the requirements of this section with respect to those facilities...
> Nondiscrimination on the Basis of Disability in State and Local Governments, 56 Fed. Reg. 35694 (July 26, 1991).

Moreover, when revisions to section 35.151(c) were made in 2008, DOJ posted Advanced Notice of Proposed Rulemaking, again indicating that implementation of these guidelines equates to compliance with the ADA:

> As a result, for the first six months after the effective date of the proposed regulation, public entity recipients can continue to use either UFAS or the 1991 Standards and be in compliance with Title II.  Six months after the effective date of the rule, the new standards will take effect ... The purpose of the six-month delay in requiring compliance with the 2004 Standards is to allow covered entities a reasonable grace period to transition between the existing and the proposed standards.  For that reason, ***if a Title II entity prefers to use the 2004 ADAAG as the standard for new construction or alterations commenced within the six month period after the effective date of the proposed regulation, such entity will be considered in compliance with Title II of the ADA***.
> Nondiscrimination on the Basis of Disability in State and Local Governments, 56 Fed. Reg. 24466, 34490 (June 18, 2008).

Thus, it is clear that when the DOJ issued the ADAAG it was advising the public at large that compliance with the guidelines satisfies the requirements of the ADA.  Moreover, as noted above, compliance with the ADAAG or the UFAS was required during the time period the Field House was constructed.  Given the regulatory history and guidance given by the DOJ,  it logically follows that compliance with these guidelines satisfies the ADA and thus precludes liability.

Although Plaintiff contends that the issue presented here has been a"real" issue in several cases, he also indicates that there are cases to support his theory.  The only authority Plaintiff provides is a reference to 28 C.F.R.§ 35.151(c)(1) and this Court's statement that it needed more

facts before making a determination on this claim.   Plaintiff however ignores the second half of the Court's order:

> The Court notes however, that Plaintiff's complaint as alleged does not state a cause of action because it relies upon incorrect legal authority.  Accordingly, Plaintiff will be given leave to amend this cause of action to remedy this deficiency and more clearly articulate the legal basis for the claim.
> (Doc. 47 at pg. 9 lines 21-24).

Plaintiff has failed to do so in this instance.

### 3.    Due Process Considerations

Even more compelling is Defendant's argument that even if this Court were to find a violation of the ADA, due process principles preclude liability since the facility complies with the ADAAG.  Defendant relies on United States v. AMC Entertainment, 549 F. 3d 760 (9th Cir. 2008), in which AMC appealed an injunctive order requiring that it renovate all of its movie theaters to be in compliance with ADAAG §  4.33.3.  At issue in AMC was the fact that subsequent to the issuance of the ADAAG guideline, DOJ issued an interpretation of the rule requiring that disabled seating have comparable lines of sight *with* comparable viewing angles. The Ninth Circuit found that theaters owners would not be required to renovate theaters that were constructed prior to DOJ's most recent directive.  The Court reasoned that operators did not have fair notice of the regulation requirements at the time the theaters were built. In doing so the Court noted :

> Due process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law.  Liberty depends on no less: "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (citation omitted).  Put more colloquially, "[t]hose regulated by the administrative agency are entitled to know the rules by which the game will be played." (citation omitted).  AMC claims it was not told the rules of building stadium-seating theaters until, at the earliest, [when] the government published its view of § 4.33.3 in its ... amicus brief.  We agree.

.     .     .     .     .     .     .     .     .

11

> Retroactive application of the viewing angle interpretation is appropriate only as of the date on which AMC received constructive notice that the government viewed § 4.33.3 as incorporating a comparable viewing angles requirement and intended to enforce that requirement.  (Citations omitted).

United States v. AMC, Entertainment, 549 F. 3d at 768.

Based on the above, the Court concluded that, "[t]he requirement of fair notice precludes the district court from requiring retrofitting of theaters built before the government announced its interpretation of § 4.33.3.  United States v. AMC, Entertainment, 549 F. 3d at 770.

Therefore, in this instance, even if this Court were to conduct discovery and conclude that there was a violation of  28 C.F.R.§ 35.151(c), Defendant would be shielded from liability because as Plaintiff concedes, there is technical compliance with the ADAAG.[5]  Since no relief would be available to Plaintiff, he has failed to state a claim upon which relief can be granted.  Future attempts at amendment would be futile, thus, leave to amend will not be given.  Moreover, Plaintiff was given leave to amend on two previous occasions yet failed to state a claim with regard to this cause of action.[6]

---

[5] Plaintiff has not alleged a violation of an alternate section of the ADAAG.  Plaintiff was advised that the SAC would be his last opportunity to amend his claims. (Doc. 47 at pg. 11).

[6] The Court notes that Mr. Daubert has an extensive litigation history with this Court. As of the date of this order he has filed sixteen lawsuits in this Court, twelve of which are filed against the City of Lindsay: Daubert v. City of Lindsay, 06-cv-214 DLB; Daubert v. City of Lindsay, 08-cv-1611 DLB; Daubert v. City of Lindsay, 09-cv-1270 GSA; Daubert v. City of Lindsay, 09-cv-1338 GSA; Daubert v. City of Lindsay, 09-cv-1690 AWI GSA; Daubert v. City of Lindsay, 10-cv-14 GSA; Daubert v. City of Lindsay, 10-cv-15 GSA; Daubert v. City of Lindsay, 10-cv-15 GSA; Daubert v. City of Lindsay, 10-cv-1430 AWI SKO; Daubert v. City of Lindsay, 10-cv-1431 OWW DLB; Daubert v. City of Lindsay, 10-cv-1587 LJO MJS; Daubert v. City of Lindsay, 10-cv-1588 AWI SKO.  The remaining cases are against other parties: Daubert v. Ophir Management Service, 06-cv-522 AWI DLB; Daubert v. Wal-Mart, 06-cv-590 AWI DLB; Daubert v. Linda Jo Palermo dba A-1 Tours & Travel, 06-cv-612 OWW-SMS; Daubert v. Lindsay Unified School District, 09-cv-1463 GSA.

The instant case initially alleged over twenty violations of the ADA.  Magistrate Judge Sandra Snyder spend two full days with the parties to settle several of these claims. There are now only a few claims remaining.  It is noted that during a break at the settlement conference for this case on August 8, 2010 (Doc. 22), Mr. Daubert filed two new cases against the City of Lindsay.  See, Daubert v. City of Lindsay, 10-cv-1430 AWI SKO and Daubert v. City of Lindsay, 10-cv-1431 OWW DLB.

1

**ORDER**

2

Accordingly, the court ORDERS that Defendant's Motion to Dismiss is GRANTED.

3

Plaintiff's claim regarding accessibility of the slot track is hereby dismissed with prejudice.

4

5

6

7

8

9

10

11

12

13       IT IS SO ORDERED.

14

**Dated:   September 6, 2011                    /s/ Gary S. Austin**

15                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

        This Court is becoming concerned with the significant amount of resources it has
24  expended on the cases listed above. The parties appear to be unable to resolve issues informally
    resulting in the filing of numerous motions.  Both sides are strongly encouraged to work more
25  cooperatively together in an effort to reduce time, effort, and costs.  Meaningful "meet and
    confers" when disagreements arise should be the rule, not the exception.  It appears many of the
26  disputes are needlessly being brought before the Court for resolution that could have otherwise
    been resolved if the parties had worked together.  As this case proceeds forward, both parties
27  shall be mindful of these observations and conduct themselves accordingly.

28                                              13